Kirby, Jr.-HD v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-024-CR

     HAROLD DWAYNE KIRBY, JR.,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the County Criminal Court No. 7
Dallas County, Texas
Trial Court # MB89-28742-H
                                                                                                    

O P I N I O N
                                                                                                    

      Appellant Kirby appeals his conviction for driving while intoxicated, for which he was
assessed 90 days in jail and a $1,000 fine. Imposition of sentence was suspended and Appellant
was placed on probation for 24 months.
      On May 16, 1989, at 2:45 a.m., Officer Thompson observed a vehicle driven by Appellant
stop in the middle of the street, then proceed down the street, and fail to maintain a single lane of
traffic. Officer Thompson stopped Appellant. There was alcohol on his breath, his eyes were
blood-shot, and his speech was slurred. Officer Thompson had Appellant perform field-sobriety
tests, determined he was intoxicated, and arrested him. At the police station, Appellant's breath
test indicated a breath-alcohol level of 0.13.
      At trial, Officer Thompson and Ronald Oliver, a technical supervisor of the Dallas County
Medical Examiner's Office, testified for the State. Appellant and John Castle, a defense expert,
testified for the defense.
      A jury found Appellant guilty, and the judge assessed 90 days in jail and a fine, probated for
24 months.
      A motion for a new trial was filed by Appellant alleging ineffective assistance of counsel
which, after a hearing, was denied by the trial court.
      Appellant appeals on two points of error.
      Point one asserts "Appellant has been denied effective assistance of counsel in violation of the
Sixth and Fourteenth Amendments to the U.S. Constitution."
      The standard of review where ineffective assistance of counsel is alleged is set out in
Strickland v. Washington, 466 U.S. 688, and Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim.
App. 1986). These cases require a showing that counsel's performance was deficient by norms
of the community, plus a showing that the deficiency so undermined the proper function of the
adversarial process that the trial cannot be relied on as having produced a just result. This is
judged by a totality of counsel's representation and not by isolated acts and omissions. Solis v.
State, 792 S.W.2d 95, 100 (Tex. Crim. app. 1980).
      The burden of proving ineffective assistance of counsel is on Appellant and must be proved
by a preponderance of the evidence. Moore v. State, 694 S.W.2d 528, 531 (Tex. Crim. App.
1985).
      Appellant asserts: (1) that his trial counsel was ineffective for not calling witnesses who could
offer exculpatory evidence; and (2) that counsel neglected his case.
      The evidence against Appellant was from Officer Thompson who testified that he was
intoxicated, and from witness Oliver who operated the breathalyzer and testified it was in good
working order, showing Appellant with a 0.13 breath-alcohol level.
      Appellant's counsel presented testimony by Appellant, who denied he was intoxicated, and
by witness Castle, a defense expert in DWI cases, who testified the breathalyzer equipment was
not reliable and over-registered alcohol content in the breath of persons being tested. He further
testified that the equipment used to test Appellant had been replaced by newer equipment. 
      Appellant claims the continuances for six years, which his counsel either secured or agreed
to, were detrimental to his defense, and that witnesses who could have testified for him were
harder to reach after six years.
      Defense counsel may have continued the case as a strategic move. At the hearing for a new
trial, Appellant did not subpoena defense counsel or any of the absent witnesses complained about.
      The record reflects defense counsel was alert, made numerous relevant objections during voir
dire and during trial. Defense counsel presented expert witness Castle who testified the
breathalyzer equipment taking Appellant's breath-alcohol content was not reliable, over-reported
alcohol content in subjects' breath, and had been replaced by updated equipment.
      Appellant has not established by a preponderance of the evidence the elements of a successful
claim of ineffective counsel, and has not shown but for his counsel's performance that there is a
reasonable probability the results of the trial would have been different.
      Point one is overruled.
      Point two asserts "the trial court abused its discretion in failing to grant a new trial in the
interest of justice."
      The decision to grant or deny a new trial rests in the sound discretion of the trial court, and
in the absences of an abuse of discretion, an appellate court may not reverse the trial court's
decision. State v. Gonzales, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993). The motion for a
new trial was based on a claim of ineffective assistance of counsel. Appellant did not subpoena
defense counsel or any of the witnesses, he asserted could have been called at trial, for the hearing
on the motion for a new trial. The Judge who heard the motion for a new trial had presided over
the trial and witnessed defense counsel's performance. It was within the Judge's discretion to
deny Appellant's motion for a new trial and we cannot say, from the record before us, that the trial
court abused its discretion in so doing.
      Point two is overruled and the judgment is affirmed.
 
                                                                               FRANK G. McDONALD
                                                                               Chief Justice (Retired)

Before Chief Justice Davis,
      Justice Cummings, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed March 26, 1997
Do not publish



reasonable restrictions or limits on cross-examination without violating an accused’s constitutional right to confront witnesses. See Delaware
v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435 (1986); Alford v. United States, 282 U.S.
687, 694, 51 S.Ct. 218, 220 (1931); Carroll v. State, 916 S.W.2d 494, 498 (Tex. Crim. App.
1996). Such restrictions may be based on concerns about harassment, prejudice, confusion of the
issues, or the witness’ safety. Van Arsdall, 475 U.S. at 679, 106 S.Ct. at 1435; Carroll, 916
S.W.2d at 498. These same concerns are mirrored in Rule 403 of the Rules of Criminal Evidence 
which provides:
Although relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the
jury, or by considerations of undue delay, or needless presentation of cumulative
evidence. 
 
Tex. R. Crim. Evid. 403. Consequently, if a trial court is permitted to limit the cross-examination
of a witness for the same reasons articulated in Rule 403, we conclude that a trial court may
exclude evidence from being elicited during cross-examination on the basis that the prejudicial
effect of such evidence clearly outweighs its probative value. See Gonzales v. State, 929 S.W.2d
546, 551 (Tex. App.—Austin 1996, pet. ref’d); see also id.
      The trial court found that the probative value of A.A.’s testimony regarding her employment
as a stripper was substantially outweighed by its prejudicial effect. Consequently, because the trial
court may limit the cross-examination of a witness for such reason without violating a criminal
defendant’s constitutional right to confrontation of witnesses, we conclude that the trial court did
not err in limiting Nevels’ cross-examination of A.A. See Gonzales, 929 S.W.2d at 551; see also
Van Arsdall, 475 U.S. at 679, 106 S.Ct. at 1435; Carroll, 916 S.W.2d at 498. Nevels’ first point
is overruled. 
Was the Defendant Harmed by the Trial Court’s Refusal to Grant a Mistrial 
After an Improper Prosecutorial Comment was Made During Jury Argument?
 
      In his second point of error, Nevels complains the trial court committed reversible error when
it refused to grant a mistrial after the State made an improper comment during jury argument. 
During closing argument the following exchange occurred:
[STATE]:. . . I don’t know how he (defense counsel) can look at you with a straight
face when he says --
 
[DEFENSE]:Your Honor --
 
[STATE]:-- that [A.A.] --
 
[DEFENSE]:-- I’m going to object to that, again striking over the shoulders.
 
COURT:And I sustain the objection and instruct the jury they’ll disregard
counsel’s last statement for any purpose.
 
[DEFENSE]:Move for a mistrial, Your Honor.
 
COURT:Overruled.
 
Nevels argues that the State’s comment about his attorney’s being unable to look at the jury with
a “straight face” as he made his closing argument struck at him over the shoulders of his defense
counsel and that his convictions should be reversed due to the trial court’s refusal to grant a mistrial
based on the impropriety of the State’s actions. The State maintains that, because the trial court
sustained Nevels’ objection and instructed the jury to disregard the comment, no error occurred. 
We agree with the State that no harmful error resulted but conclude that when an improper jury
argument strikes at the accused over the shoulders’ of his defense counsel a curative instruction
cannot cure the harm and a harm analysis under Rule 81(b)(2) of the Rules of Appellate Procedure
is required. See Tex. R. App. P. 81(b)(2), 49 Tex. B.J. 581 (Tex. Crim. App. 1986, repealed
1997).
      Permissible jury argument is limited to four areas: (1) summation of the evidence, (2)
reasonable deductions from the evidence, (3) responses to opposing counsel’s argument, and (4)
pleas for law enforcement. Lagrone v. State, 942 S.W.2d 602, 620 (Tex. Crim. App. 1997);
Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995); Hoffman v. State, 922 S.W.2d
663, 675 (Tex. App.—Waco 1996, pet. ref’d). When a jury argument falls outside these areas,
error occurs. See, e.g., Lagrone, 942 S.W.2d at 619; Dinkins, 894 S.W.2d at 357. However, an
instruction to disregard the argument generally cures the harm. See Dinkins, 894 S.W.2d at 357;
Cooks v. State, 844 S.W.2d 697, 727 (Tex. Crim. App. 1993). 
      Despite this general rule, the Court of Criminal Appeals seems to have adopted two different
tests for determining whether the accused was harmed by an improper jury argument. The
distinction appears to hinge on whether the improper argument struck at the accused over the
shoulders of defense counsel. See Lagrone, 942 S.W.2d at 618-20; Dinkins, 894 S.W.2d at 357;
Coble v. State, 871 S.W.2d 192, 204-05 (Tex. Crim. App. 1993); Cooks, 844 S.W.2d at 727-28;
Orona v. State, 791 S.W.2d 125, 128-30 (Tex. Crim. App. 1990); McGee v. State, 774 S.W.2d
229, 237-39 (Tex. Crim. App. 1989). Ordinarily, when a trial court sustains an objection to an
improper jury argument and admonishes the jury to disregard the inappropriate comment, a
presumption exists that the curative instruction eliminated any harm that resulted from the improper
argument unless the comment was so inflammatory that its prejudicial effect could not reasonably
be removed. See Cooks, 844 S.W.2d at 727; see also Dinkins, 894 S.W.2d at 375; Jones v. State,
568 S.W.2d 847, 860 (Tex. Crim. App. 1978). However, when the improper jury argument
strikes at the accused over defense counsel’s shoulders, the presumption that an instruction by the
trial court to disregard the comment obviates the harm is overridden by the presumption that an
improper jury argument which strikes at the accused over defense counsel’s shoulders is so
egregious that a curative instruction has no impact on the error. See Dinkins, 894 S.W.2d at 357;
Orona, 791 S.W.2d at 130. As a consequence, a harm analysis must be conducted to determine
if the error contributed to the outcome of the defendant’s trial. See id.; see also Tex. R. App. P.
81(b)(2) (repealed).



      In the present case, the prosecutor’s comment that she did not know how Nevels’ defense
counsel could sincerely make his closing argument did not fall within one of the four permissible
areas of jury argument. Consequently, we must determine whether the trial court’s overruling of
Nevels’ motion for a mistrial after the court sustained his objection to the comment resulted in error
requiring reversal. Tex. R. App. P. 81(b)(2) (repealed); Lagrone, 942 S.W.2d at 920; Orona, 791
S.W.2d at 129-30; Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989); Bryant v. State,
923 S.W.2d 199, 211 (Tex. App.—Waco 1996, pet. ref’d).
      To determine whether any harm resulted from the alleged error of the trial court’s denial of
Nevels’ motion for mistrial, we “must calculate the probable impact of the error on the jury in light
of the existence of the other evidence” and weigh the evidence presented in support of Nevels’ guilt
with the State’s improper comment. See Lagrone, 942 S.W.2d at 620; see also Orona, 791 S.W.2d
at 130; Harris, 790 S.W.2d at 587. In making that determination, we will consider the following
six factors: (1) the source of the error, (2) the nature of the error, (3) whether or to what extent the
error was emphasized by the State, (4) the probable collateral implications of the error, (5) how
much weight a juror would probably place on the error, and (6) whether declaring the error
harmless would encourage the State to repeat it with impunity. Orona, 791 S.W.2d at 130; Harris,
790 S.W.2d at 587; see also Lagrone, 942 S.W.2d at 620; Bryant, 923 S.W.2d at 212.
      We begin our analysis by observing that the comment was made by the State during its rebuttal
at the guilt-innocence phase of Nevels’ trial. Nevels’ defense counsel quickly objected, not even
allowing the prosecutor to finish the sentence containing the improper comment. The error,
therefore, was minimal. Moreover, when we calculate the probable impact of the error on the jury
in light of the evidence presented in support of Nevels’ guilt, we conclude that such evidence
negates the impact, if any, the improper comment had on the jury. See Lagrone, 942 S.W.2d at
620; see also Orona, 791 S.W.2d at 130; Harris, 790 S.W.2d at 587. Not only did the victim of
the particular sexual assault referenced in the improper prosecutorial comment testify at trial,
identifying Nevels as her attacker and recounting the violent attack, the State also introduced into
evidence pictures of A.A.’s bruised face and body. Additionally, the State introduced into evidence
the results of A.A.’s forensic examination which also showed A.A.’s bruised body and indicated
that A.A. had sustained a “slight abrasion at [the] entrance to [her] vagina.”
      In light of the “other evidence” presented at trial, we conclude that the trial court’s failure to
grant Nevels’ motion for mistrial, after an improper comment made during the State’s closing
argument, did not result in any harm to Nevels. See Tex. R. App. P. 82(b)(2) (repealed); Lagrone,
942 S.W.2d at 620; see also Orona, 791 S.W.2d at 130; Harris, 790 S.W.2d at 587. Nevels’
second point is overruled.
Was the Evidence Legally and Factually Sufficient to Support the Jury’s Verdict?
         In his third point of error, Nevels argues that the evidence is both legally and factually
insufficient to support his conviction for the aggravated sexual assault of S.S.


 Nevels contends
that there is insufficient evidence to support the jury’s finding that he threatened to use force or
violence against S.S. when he sexually assaulted her.
      When we review a challenge to the legal sufficiency of the evidence, we view all the evidence
in the light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim.
App. 1995); Geesa v. State, 820 S.W.2d 154, 157 (Tex. Crim. App. 1991); Hernandez v. State,
938 S.W.2d 503, 513 (Tex. App.—Waco 1997, pet. ref’d). In conducting such a review, we must
remember that the jury is the sole fact finder and is charged with the duty of judging the credibility
of the witnesses, reconciling conflicts in testimony, and accepting or rejecting any or all of the
evidence on either side. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). If
some evidence establishes the accused’s guilt beyond a reasonable doubt, then we may not reverse
the judgment on legal insufficiency grounds. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim.
App. 1988).
      In conducting a factual-sufficiency review, we must view all the evidence, presented by both
the State and the defendant, and reverse only if the verdict is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996). Furthermore, we give great deference to the jury’s finding, realizing that
we are reviewing the facts from a lifeless record. See Jones v. State, 944 S.W.2d 642, 648 (Tex.
Crim. App. 1996); Clewis, 922 S.W.2d at 133; Hernandez, 938 S.W.2d at 512; Mata v. State, 939
S.W.2d 719, 725 (Tex. App.—Waco 1997, no pet.).
      It is undisputed that Nevels encountered S.S. as she was walking across Interstate 35 on the
Forrest Street Bridge in Waco. According to S.S., she was walking home after visiting some
friends when a man in a red car called her by name. S.S. did not know the man, but when he said
he knew some of her relatives she accepted a ride from him. Instead of driving to S.S.’s house,
Nevels drove in the opposite direction, saying that he had to stop by his own house. Nevels drove
to a wooded area where he stopped the car. S.S. testified that Nevels ordered her to take off her
clothes, telling her that if she refused to comply he would hit her with the rock she had in her
hand.


 Nevels then forcibly removed the rock from her hand. S.S. stated that she was afraid of
Nevels and that she feared if she did not comply with his demands he would “get violent” and she
would “end up back there dead under some of the trees.” After the attack, S.S. stated that Nevels
seemed “deranged” and that she was able to convince him to drive to a motel under the pretense
of getting crack cocaine from some of her friends. At the motel, S.S. told the clerk that she had
been sexually assaulted and gave the clerk the license plate number.
      Nevels’ version of the events that transpired after he picked up S.S. varies from S.S.’s version. 
According to Nevels, he had known S.S. for several years and that on at least three different
occasions S.S. had performed oral sex on him in exchange for crack cocaine. The night he
encountered S.S., Nevels stated he believed that he and S.S. were “going to get high” together. 
Nevels testified that S.S. initiated the sexual contact between the two when she started “playing
with [him] while [he] was going down the interstate.” Nevels then drove to an isolated area where
they smoked crack cocaine and had “regular” sex. Nevels does not dispute that, after having sex
with S.S., she suggested they drive to a motel to get more cocaine. However, he testified that upon
arrival, S.S. said that her friends’ car was not there and that she got out to ask the motel clerk if
her friends were still registered at the motel. S.S. then returned to the car to tell Nevels that her
friends were still registered at the motel and that she was going to wait for them. Telling S.S. that
he did not want to wait, Nevels drove away. 
      When we review the evidence adduced at trial in the light most favorable to the prosecution,
we conclude that there is legally sufficient evidence to support the verdict that S.S. was placed in
fear of death or serious bodily injury by the words or acts of Nevels. S.S. testified that she feared
Nevels would hurt or even kill her if she did not comply with his demands and submit to his sexual
attack. Such evidence is legally sufficient to support Nevels’ conviction of the aggravated sexual
assault of S.S. See Selvog v. State, 895 S.W.2d 879, 882 (Tex. App.—Texarkana 1995, pet.
ref’d).  Considering all the evidence in the record, there is also factually sufficient evidence to
support Nevels’ conviction of the aggravated sexual assault of S.S. Even though Nevels disputes
that he had sexual intercourse with S.S. without her consent, giving the appropriate deference to
the jury, we cannot say that the verdict was so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. See Jones, 944 S.W.2d at 648; Clewis, 922 S.W.2d at 133;
Hernandez, 938 S.W.2d at 512; Mata, 939 S.W.2d at 725. Therefore, we hold there is both
legally and factually sufficient evidence to support Nevels’ conviction of the aggravated sexual
assault of S.S. and overrule Nevels’ third point of error.
Did the Trial Court Err in Refusing to Instruct the Jury on a Lesser-Included Offense?
      In his fourth point, Nevels contends the trial court erred in refusing to include an instruction
on the lesser-included offense of sexual assault and only charging the jury on aggravated sexual
assault in regard to S.S. Nevels argues there was sufficient evidence presented to allow the jury
to find that he was guilty only of sexual assault and not of the aggravated offense because a dispute
existed as to whether Nevels’ acts or words placed S.S. in fear of death or serious bodily injury. 
      An offense is “lesser-included” of the offense charged in an indictment if: (1) it is established
by proof of the same, or less than all, facts required to establish the greater offense; (2) it differs
from the greater offense only in the respect that proof of a less serious injury or risk of injury is
sufficient to establish it; (3) it differs from the greater offense only in the respect that proof of a
less culpable mental state is sufficient to establish it; or (4) it consists of an attempt to commit the
greater offense. Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 1981); Arevalo v. State, 943
S.W.2d 887, 888-89 (Tex. Crim. App. 1997); Easter v. State, 867 S.W.2d 929, 940 (Tex.
App.—Waco 1993, pet. ref’d). 
      In determining whether a jury must be instructed concerning a lesser-included offense, a two-step analysis must be applied. Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.
1993); Easter, 867 S.W.2d at 940. First, the lesser-included offense must be included within the
proof necessary to establish the offense charged. Rousseau, 855 S.W.2d at 672; Easter, 867
S.W.2d at 940. Second, there must be some evidence in the record that would permit a jury
rationally to find that, if the defendant is guilty, he is guilty of only the lesser offense. Arevalo,
943 S.W.2d at 889; Rousseau, 855 S.W.2d at 673; Royster v. State, 622 S.W.2d 442, 446 (Tex.
Crim. App. [Panel Op.] 1981) (on rehearing); Easter, 867 S.W.2d at 940. Furthermore, the Court
of Criminal Appeals has expressly stated that:
It is not enough that the jury may disbelieve crucial evidence pertaining to the greater
offense. Rather, there must be some evidence directly germane to a lesser-included
offense for the factfinder to consider before an instruction on a lesser-included offense is
warranted. 
 
Skinner v. State, No. 72,131, slip op. at 16 (Tex. Crim. App. May 21, 1997) (citing Bignall v.
State, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994)).
      The State does not dispute that sexual assault is a lesser-included offense of aggravated sexual
assault. See Ramos v. State, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993); see also Tex. Pen.
Code Ann. §§ 22.011, 22.021 (Vernon 1994 & Supp. 1997). We therefore turn to the second
prong of the test for determining whether a charge on a lesser-included offense should have been
given: Was there sufficient evidence in the record to allow the jury to rationally find Nevels guilty
of only the sexual assault of S.S.? As set out above, both the victim, S.S., and Nevels testified as
to the events which occurred on September 6, 1995, the day Nevels attacked S.S. According to
S.S., she felt compelled to comply with Nevels’ demands because she feared for her life. Nevels
contends that the sexual contact between he and S.S. was consensual.
      Having reviewed the record, we cannot conclude that any evidence was presented at trial to
allow the jury to rationally find Nevels guilty of only sexual assault as opposed to aggravated sexual
assault. The aggravating element of the offense with which Nevels is charged is whether he, by
acts or words, placed S.S. in fear of death or serious bodily injury. See Tex. Pen. Code Ann. §§
22.021(a)(1)(A)(i), 22.021(a)(2)(A)(ii) (Vernon Supp. 1997). To be entitled to a charge on the
lesser-included offense of sexual assault, there would have to be evidence presented that Nevels did
not place S.S. in fear of death or serious bodily injury during the attack. Nevels’ own testimony
that he and S.S. engaged in consensual sexual intercourse is the only evidence in the record that
might have allowed the jury to have found Nevels guilty of only sexual assault. To have included
an instruction to the jury on the lesser-included offense of sexual assault would have undermined
the rationale behind the second prong of the test for determining whether a defendant is entitled to
such instruction and “would constitute an invitation to the jury to return a compromise or otherwise
unwarranted verdict.” Arevalo, 943 S.W.2d at 889 (citing Model Penal Code § 1.07(5) (1985)). 
Consequently, we conclude that Nevels was not entitled to a jury instruction on the lesser-included
offense of sexual assault and overrule his fourth point of error.
      The judgment is affirmed. 
 
                                                                                             BOBBY L. CUMMINGS
                                                                                             Justice
 
Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed 
Opinion delivered and filed October 1, 1997
Publish