TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00527-CR


NO. 03-97-00528-CR






David Eric Pope, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NOS. 0972516 & 0972517, HONORABLE FRED MOORE, JUDGE PRESIDING







In the first cause, a jury found appellant guilty of aggravated sexual assault of a
child and indecency with a child by contact. Tex. Penal Code Ann. §§ 21.11(a)(1) (West 1994),
22.021(a)(1)(B)(iii), (a)(2)(B) (West Supp. 1998). The jury assessed punishment for each offense,
enhanced by a previous felony conviction, at imprisonment for fifty years. In the second cause,
the jury found appellant guilty of indecency with a child by contact and assessed punishment, also
enhanced, at imprisonment for sixty years. 

By a single point of error, appellant contends the district court unfairly restricted
his cross-examination of the State's witnesses, thereby denying him his right to confront the
witnesses against him. U.S. Const. Amend. V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc.
Ann. art. 1.05 (West 1977). We will overrule this contention and affirm.

Appellant spent the evening in question with Kurt and Jennifer Helton and their twin
five-year-old daughters. Kurt and appellant had been drinking beer and were intoxicated. Around
9:00 p.m., the Heltons were called away on an emergency. The two girls were asleep on their
parents' bed and appellant was asleep on the living room couch. The Heltons awakened appellant
and told him to keep watch while they were gone. Thirty minutes later, when they returned to
their home, the Heltons found appellant and the two girls standing in the kitchen. The girls were
upset, and one said she could not find her panties. Jennifer took the girls into the master bedroom,
where she found the missing panties on the floor, and asked them what had happened. They
initially replied that nothing had happened. When Jennifer persisted, the girls told her that
appellant had pulled down their panties and played with their "pee pees." Jennifer called Kurt into
the room and told him what had been said. He returned to the kitchen and angrily confronted
appellant with the accusation. Asked if it were true, appellant answered, "Yes." The police were
called and, during further questioning by an officer, one girl reported that appellant had also licked
her "pee pee." The officer who transported appellant to the police station testified that appellant 
appeared unconcerned, and made statements "along the line that he did not care and that we were
going to pin it on him anyhow."

Appellant complains that he was not allowed to cross-examine Kurt and Jennifer
Helton about an incident that occurred when the family was living in Florida, one year before the
charged offenses took place. In this earlier incident, one of the girls told her parents that a
fourteen-year-old boy who was babysitting the sisters had touched her genital area. Appellant 
argued at trial, as he now does on appeal, that this experience made the Heltons "hypersensitive"
to suggestions of sexual misconduct against their daughters. For this reason, argues appellant,
Jennifer immediately assumed that appellant had sexually assaulted the girls when she found them
awake upon her return to the house, and asked the girls suggestive and manipulative questions that
produced the accusations against appellant. Appellant also argues that the earlier incident may
have made the girls more susceptible to making false accusations, since they "knew which kind
of responses were positively reinforced by adults."

In essence, appellant argues that the Florida incident was relevant to show the bias
of the State's witnesses and in particular Jennifer Helton, the person who first suspected sexual
misconduct and whose questioning elicited the girls' accusations against appellant. As part of the
Sixth Amendment right to confrontation, a defendant must be given great latitude to show any fact
that would tend to establish bias or motive on the part of a witness testifying against him. 
Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986); Gonzales v. State, 929 S.W.2d 546, 549
(Tex. App.--Austin 1996, pet. ref'd). On the other hand, a trial court retains wide latitude to
impose reasonable limits on such cross-examination based on concerns about such things as
confusion of the issues and marginal relevance. Van Arsdall, 475 U.S. at 679. When the
proffered evidence concerns a specific instance of past sexual conduct by the victim in a sexual
assault prosecution, a trial court must find that the probative value of the evidence outweighs the
danger of unfair prejudice before admitting it. Tex. R. Evid. 412(b)(3). 

Appellant's argument in support of his point of error exaggerates the scope of the
district court's ruling. The court prohibited only questioning "having to do with the outcry in
Florida and circumstances surrounding that." The court told defense counsel, "[I]f you want to
question her [Jennifer] about her hypersensitive [sic], if you perceive it in those terms, that's fine. 
Go ahead." The court also told counsel that defense witnesses could testify "about the conduct
of the mother and the father; if they've ever taught her about a good touch and a bad touch; if
they're overly concerned about those kinds of things." While cross-examining Jennifer Helton,
defense counsel was allowed to question her about whether she was "very sensitive to the issue
of molestation of your children," had "immediately suspected [appellant] of having done
something," and had "cajole[d] or . . . repeatedly question[ed] [the girls] before they told you that
he had touched them." In addition, counsel cross-examined the two girls about whether they had
been told what to say. The relevance of the details of the Florida incident was also diminished by
the evidence of appellant's statements admitting the allegations. 

We conclude from the record that appellant was given a fair opportunity to question
Jennifer Helton about her "hypersensitivity" regarding sexual misconduct against her daughters. 
The defense was also fairly permitted to question the State's witnesses about the possibility that
the girls were improperly led or coerced to make the accusations against appellant. By prohibiting
only questions regarding the specific facts of the Florida incident, the trial court was well within
the scope of its discretion to exclude marginally relevant, potentially confusing, and unfairly
prejudicial testimony. The point of error is overruled.

The judgments of conviction are affirmed.



 

 J. Woodfin Jones, Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed

Filed: October 29, 1998

Do Not Publish



he kitchen and angrily confronted
appellant with the accusation. Asked if it were true, appellant answered, "Yes." The police were
called and, during further questioning by an officer, one girl reported that appellant had also licked
her "pee pee." The officer who transported appellant to the police station testified that appellant 
appeared unconcerned, and made statements "along the line that he did not care and that we were
going to pin it on him anyhow."

Appellant complains that he was not allowed to cross-examine Kurt and Jennifer
Helton about an incident that occurred when the family was living in Florida, one year before the
charged offenses took place. In this earlier incident, one of the girls told her parents that a
fourteen-year-old boy who was babysitting the sisters had touched her genital area. Appellant 
argued at trial, as he now does on appeal, that this experience made the Heltons "hypersensitive"
to suggestions of sexual misconduct against their daughters. For this reason, argues appellant,
Jennifer immediately assumed that appellant had sexually assaulted the girls when she found them
awake upon her return to the house, and asked the girls suggestive and manipulative questions that
produced the accusations against appellant. Appellant also argues that the earlier incident may
have made the girls more susceptible to making false accusations, since they "knew which kind
of responses were positively reinforced by adults."

In essence, appellant argues that the Florida incident was relevant to show the bias
of the State's witnesses and in particular Jennifer Helton,